UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>DAVID G. HOLOHAN,<br><br>        Defendant. | Civil No. 11-4017 (NLH/KMW)<br><br>**OPINION** |

**APPEARANCES:**

Frank J. Martone, Esquire
Frank J. Martone, PC
1455 Broad Street
Bloomfield, New Jersey 07003
    *Attorney for Plaintiff*

David G. Holohan
2919 Marne Highway
Mt. Laurel, New Jersey 08054
    *Pro se*

**HILLMAN, District Judge**

    This matter comes before the Court by way of <u>pro se</u>
Defendant David Holohan's motion [Doc. No. 5] to vacate a default
judgment previously entered against him.  Plaintiff, the United
States of America (hereinafter, the "United States"), opposes
Defendant's motion.  The Court has considered the parties'
submissions, and decides this matter pursuant to Federal Rule of
Civil Procedure 78.

    For the reasons expressed below, Defendant's motion to

vacate the default judgment is denied.

## I.   <u>**JURISDICTION**</u>

The United States brings this action against Defendant seeking to recovery on defaulted student loans asserting that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345.  Section 1345 provides in pertinent part that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1345.  Because the present suit was brought by the United States, the Court exercises jurisdiction over Plaintiff's claims under Section 1345.

## II.  <u>**BACKGROUND**</u>

On July 13, 2011, the United States filed the complaint in this action alleging that Defendant was indebted to the United States in the amount of $17,419.95, plus costs and post-judgment interest for defaulting on student loan obligations, and a summons was issued that same day.  (<u>See</u> Compl. [Doc. No. 1] ¶ 2; <u>see also</u> Summons [Doc. No. 2] 1.)  On September 15, 2011, the United States requested that the Clerk of Court enter default against Defendant pursuant to Federal Rule of Civil Procedure

55(a).[1]  (Request for Entry of Default & Default J. [Doc. No. 3]
1.)  The United States further requested that the Clerk of Court
enter default judgment against Defendant pursuant to Federal Rule
of Civil Procedure 55(b)(1).[2]  (Id.)  On the following day, the
Clerk of Court entered default against Defendant under Rule
55(a), and subsequently entered a default judgment against
Defendant pursuant to Rule 55(b)(1) in the amount of $17,813.34
as of September 15, 2011, plus interest at a rate of $1.41 per
day until the date of judgment, costs in the amount of $110.00,
and post judgment interest.  (Default J. [Doc. No. 4] 1.)

Approximately six weeks later, Defendant filed the present
motion [Doc. No. 5] to vacate the default judgment entered
against him.


## III. **DISCUSSION**

Federal Rule of Civil Procedure 55(c) provides that the
Court "may set aside an entry of default for good cause, and ...

---

1.  Rule 55(a) provides that "[w]hen a party against whom a
judgment for affirmative relief is sought has failed to plead or
otherwise defend, and that failure is shown by affidavit or
otherwise, the clerk must enter the party's default."  FED. R.
CIV. P. 55(a).

2.  Under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum
certain or a sum that can be made certain by computation, the
clerk – on the plaintiff's request, with an affidavit showing the
amount due – must enter judgment for that amount and costs
against a defendant who has been defaulted for not appearing and
who is neither a minor nor an incompetent person."  FED. R. CIV.
P. 55(b)(1).

may set aside a default judgment under Rule 60(b)." FED. R. CIV.
P. 55(c). Accordingly, pursuant to Rule 60(b), a defendant may
move to set aside a default judgment, and the Court may grant
such relief for any of the following reasons:

    (1)  mistake, inadvertence, surprise, or excusable
        neglect;
    (2)  newly discovered evidence that, with
        reasonable diligence, could not have been
        discovered in time to move for a new trial
        under Rule 59(b);
    (3)  fraud ..., misrepresentation, or misconduct
        by an opposing party;
    (4)  the judgment is void;
    (5)  the judgment has been satisfied, released or
        discharged; it is based on an earlier
        judgment that has been reversed or vacated;
        or applying it prospectively is no longer
        equitable; or
    (6)  any other reason that justifies relief.

FED. R. CIV. P. 60(b). Defendant does not identify the subsection
of Rule 60(b) upon which he relies, but construing Defendant's
motion to vacate the default judgment liberally, it appears
Defendant is moving to set aside the default judgment under the
first and sixth subsections.

    Generally, default judgments are disfavored by the courts,
and therefore, where a defendant moves to set aside a default
judgment the law "require[s] doubtful cases to be resolved in
favor of the party moving to set aside the default judgment 'so
that cases may be decided on their merits.'" United States v.
$55,518.55 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)
(citation omitted). Moreover, the "decision to set aside ... a

default judgment pursuant to Fed.R.Civ.P. 60(b) is left primarily to the discretion of the district court." Id. at 194 (footnotes omitted).  As the Third Circuit recently explained, "'[i]n exercising its discretion in granting or denying a motion to set aside a ... default judgment under Rule 60(b)(1),' the district court should consider: '(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct.'" United States v. $90,745.88 Contained in Account Number 9506826724 Held in the Name of and/or for the Benefit of Amiri Mbubu Auto Sales, LLC., at Bank of America, 1125 Rt. 22 W., Bridgewater, New Jersey 08807, No. 11-1324, 2012 WL 456535, at *1 (3d Cir. Feb. 14, 2012) (citing $55,518.55 in U.S. Currency, 728 F.2d at 195).

Although listed as the second factor, the Third Circuit and courts in this District have repeatedly acknowledged that "the meritorious-defense factor [is] the 'threshold issue in opening a default judgment.'" Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 522 (3d Cir. 2006) (citing Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)); see also $90,745.88 Contained in Account Number, 2012 WL 456535, at *1 (same); Nyholm v. Pryce, 259 F.R.D. 101, 105-06 (D.N.J. 2009) ("The second factor, whether the defendant has established a meritorious defense, is deemed a 'threshold question' because

without it, the defendant could not win at trial and, thus, 'there would be no point in setting aside the default[.]'"); Wyndham Hotels and Resorts, LLC v. Rhonda & Sons, Inc., No. 10-cv-02868, 2011 WL 831940, at *1 (D.N.J. Mar. 1, 2011) (same).

To demonstrate a meritorious defense, a defendant must set forth "'allegations ... [that], if established on trial, would constitute a complete defense to the action.'" $55,518.55 in U.S. Currency, 728 F.2d at 195. The defendant must allege "specific facts beyond simple denials or conclusionary statements[,]" id., because "'[d]efault judgments cannot be set aside simply because of ... ambiguous conclusions'" or "threadbare assertions[.]" $90,745.88 Contained in Account Number, 2012 WL 456535, at *1 (citing $55,518.55 in U.S. Currency, 728 F.2d at 196). Once a defendant "set[s] forth with some specificity the grounds for his defense[,]" the court must "then look at the substance of that defense to determine whether it is meritorious" but is not required to decide the legal issue at that stage of the case. Nationwide Mut., 175 F. App'x at 522.

With respect to the other two factors, a showing that defendant's culpability led to the default judgment requires "'more than mere negligence ... be demonstrated.'" Nationwide Mut., 175 F. App'x at 523 (citing Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984)). A lack of culpability by the defendant is typically found in cases that "involved innocent

mishaps or mere mistakes[,]" whereas "'[r]eckless disregard for
repeated communications from plaintiffs and the court ... can
satisfy the culpable conduct standard.'"  Nationwide Mut., 175 F.
App'x at 523 (citing Hritz, 732 F.2d at 1183).  Prejudice to
plaintiff "is established ... when a plaintiff's 'ability to
pursue the claim has been hindered .... [by, for example,] loss
of available evidence, increased potential for fraud or
collusion, or substantial reliance upon the judgment.'"
Nationwide Mut., 175 F. App'x at 524 (citing Feliciano v. Reliant
Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982)).  However,
"[d]elay in realizing satisfaction on a claim rarely serves to
establish the degree of prejudice sufficient to prevent the
opening [of] a default judgment entered at an early stage of the
proceeding."  Feliciano, 691 F.2d at 656-57.

As compared to Rule 60(b)(1), "the text of Rule 60(b)(6)
states simply that a court may grant relief from a final judgment
for 'any other reason that justifies relief,' [but] courts have
added a requirement that a party seeking Rule 60(b)(6) relief
must demonstrate the existence of 'extraordinary circumstances'
that justify reopening the judgment."  Budget Blinds, Inc. v.
White, 536 F.3d 244, 255 (3d Cir. 2008) (footnote and citations
omitted).  Thus, under Rule 60(b)(6), relief can only be granted
upon "a showing of 'extreme and unexpected hardship.'"
$90,745.88 Contained in Account Number, 2012 WL 456535, at *2

(citing <u>Budget Blinds</u>, 536 F.3d at 255).

IV.  <u>**ANALYSIS**</u>

    **A.  Meritorious Defense**

    In order to assess whether Defendant in this case has alleged a meritorious defense, the Court must first consider the nature of the underlying action to recover on defaulted student loans and what Defendant would need to demonstrate to successfully defend against that action.  See <u>$55,518.55 in U.S.</u> <u>Currency</u>, 728 F.2d at 195 (recognizing that "[t]o determine whether [the defendant's answer] establishes a complete defense we must look to the [underlying] forfeiture action itself and what is required of a defendant in order to successfully defend" against it).

    Here, the United States brings this action against Defendant seeking to recover a debt that arises out of defaulted student loans guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA") and then reinsured by the Department of Education under loan guaranty programs authorized by the Higher Education Act of 1965.  (<u>See</u> U.S. Dep't of Ed. Certificate of Indebtedness [Doc. No. 1-3] 1.)  The United States asserts that Defendant executed promissory notes to secure three loans from Girard Bank and now owes over $17,000 for defaulting on his obligation to repay these student loans.  (<u>Id.</u>)

    As noted by other courts in this Circuit, "[i]n an action to

8

recover on a promissory note for student loans, 'the government must show (1) the defendant signed [the note], (2) the government is the present owner or holder, and (3) the note is in default.'" United States v. Considine, No. 3:06-cv-6118-FLW, 2008 WL 4723030, at *2 (D.N.J. Oct. 24, 2008) (citing United States v. Hargrove, No. 06-1059, 2007 WL 2811832, at *2 (E.D. Pa. Sept. 24, 2007)).  In assessing whether Defendant in this case has sufficiently alleged a meritorious defense, the Court must evaluate Defendant's allegations within this framework. Defendant makes several allegations he considers as sufficiently meritorious to warrant setting aside the default judgment entered against him.  The Court addresses each of Defendant's allegations in turn.

    (1) Readability

Initially, Defendant alleges that he was unable to view the document[3] provided to him because he has poor eye sight and the document was a "bad copy."  (Mot. to Vacate Default J. [Doc. No. 5] 2.)  The United States disputes Defendant's contention and further argues that it was Defendant's responsibility to seek assistance in reading the documents or requesting "additional copies or clarifications" from the United States.  (Mem. in Opp'n

---

3.  It is unclear from the motion which document Defendant is referencing.  Presumably Defendant is referring to the summons and complaint, although it also seems plausible to the Court that Defendant is referring to a copy of the original student loan agreement or the promissory notes attached as exhibits to the United States' complaint in this action.

to Mot. to Vacate Default J. [Doc. No. 7] 4.)  The United States
specifically represents that the "documents and papers attached
to the Complaint are readable, particularly the multiple
promissory notes, even with business markings made on them
throughout their life span."  (Id.)

       To the extent Defendant contends that the complaint in this
action and the accompanying exhibits, including copies of the
original promissory notes, are illegible or unreadable in their
present form, the Court finds this allegation insufficient to
constitute a meritorious defense.  A review of the complaint
[Doc. No. 1] demonstrates that the complaint is type-written and
utilizes a legible type-face in a size adequate for the Court to
read, review, and understand the allegations made by the United
States.  The same is true of the U.S. Department of Education
Certificate of Indebtedness [Doc. No. 1-3] attached as an exhibit
to the complaint.  With regard to the attached copies of the
promissory notes, it is the Court's view that generally these
documents are legible.[4]  Moreover, even accepting Defendant's

_____

4.  The Court notes though, that some portions of the promissory
notes contain very small print, which may, in some cases be
difficult to read without the aid of glasses or another
magnification device for someone with poor eye sight.  Moreover,
some of the copied documents have even been stamped as "Poor
Source Original - Documents will be retained in portfolio" and
"Best Copy Available At Time of Imaging".  (Ex. 1, Promissory
Notes [Doc. No. 1-2] 6-8.)
     However, in spite of these issues, the key terms of the notes
are sufficiently legible, and to the extent Defendant had
difficulty reading these documents, he could have requested other
copies or sought assistance in reviewing the documents.

allegation as true -- that he could not read the documents
because he has poor eye sight and was given bad copies -- the
inability to read the allegations of a law suit brought against
you, whether it results from poor eye sight, the quality of the
documents, or complete illiteracy, is simply insufficient to
constitute a defense to, what may be, legitimate claims by a
plaintiff.  Cf. Hughes v. Idaho State Bd. of Corr., 800 F.2d 905,
909 (9th Cir.1986) (explaining that pro se habeas corpus
petitioner is accountable for procedural default even if he was
illiterate).  A party cannot be permitted to defend against
claims made against him simply by asserting an inability to read
the documents provided to him, without more, and thus,
Defendant's first assertion does not satisfy the meritorious
defense standard.

(2)  Terms of the Agreement & Amount of Judgment

Next, Defendant asserts that the "entire agreement was never
presented to" him, but that he specifically remembers "a clause
in the original agreement stating that the interest and penalties
can not [sic] exceed more that 25% of the principal balance."
(Mot. to Vacate Default J. [Doc. No. 5] 2.)  According to
Defendant, the "stated amount of this judgment is far more than
[the principal balance] and [therefore,] must be incorrect."
(Id.)  The United States disputes Defendant's allegations and
argues that a review of the promissory notes demonstrates that

none of the notes contain a clause or term limiting interests and penalties on the loan from exceeding twenty-five percent of the principal balance.  (Mem. in Opp'n to Mot. to Vacate Default J. [Doc. No. 7] 5.)  The United States further contends the amount of the judgement, as supported by the Certificate of Indebtedness, is in fact correct because, under paragraph VI of each of the notes, interest on the loans began to accrue on the dates the loans were disbursed, and any unsubsidized, unpaid interest could properly be capitalized at any time.  (Id.)

Having considered Defendant's allegations regarding the terms of the loan and the accuracy of the judgment, the Court finds that these allegations are also insufficient to constitute a meritorious defense.  Specifically, Defendant could not establish these allegations at trial because the promissory notes undisputedly demonstrate that there is no clause limiting the total amount of interest and penalties which may accrue on the loans to just twenty-five percent of the principal balance, despite Defendant's assertions to the contrary.  (See Ex. 1, Promissory Notes [Doc. No. 1-2] 6-8).  Defendant's threadbare assertion that the amount of the judgment "must be incorrect" remains wholly unsupported here because Defendant does not allege specific facts to challenge the amount of the judgment beyond Defendant's inaccurate recollection of the terms of the loan. Defendant's ambiguous conclusion that the judgment is incorrect,

alone, is inadequate to constitute a complete defense to the specific terms set forth in the promissory notes and the information presented in the Certificate of Indebtedness from the U.S. Department of Education.

Although Defendant asserts that he was "never presented" with the "entire agreement[,]" Defendant's representation is belied by the fact that his signature is evidenced on each of the six promissory notes attached to the complaint.  Moreover, Defendant not only fails to dispute that he executed the promissory notes in question, or to otherwise challenge the authenticity of the signatures on the notes, but it appears to the Court that the signatures on the promissory notes are nearly identical to Defendant's signature as it appears on his affidavit in support of the present motion.  (Compare Ex. 1, Promissory Notes [Doc. No. 1-2] 6-8, with Aff. in Supp. of Mot. [Doc. No. 5] 1.)

### (3) Fair Debt Collection Practices Act

Third, Defendant alleges that his last contact with the Department of Education was in 1986, and since that time, the United States has not sent "official correspondence [to Defendant] or [made an] attempt to collect this debt" under the requirements of the Fair Debt Collection Practices Act ("the Act" or "FDCPA"), 15 U.S.C. § 1601, et seq.  (Mot. to Vacate Default J. [Doc. No. 5] 2.)  The United States argues that this "point is

13

without merit[,]" noting that the complaint itself contains a
section entitled "Notice Required by the Fair Debt Collection
Practices Act 15 U.S.C. Section 1601 as amended[,]" thereby
demonstrating that the United States complied with the
requirements of the Act  (Mem. in Opp'n to Mot. to Vacate Default
J. [Doc. No. 7] 5.)  The United States further argues that the
allegation that Defendant has not had any contact with the
Department of Education since 1986 is irrelevant.  (Id.)  The
United States further contends that to the extent Defendant's
allegation can be construed as a statute of limitations, laches,
or estoppel defense, any such argument must fail because there is
no statute of limitations on the collection of student loan debt
by the federal government pursuant to 20 U.S.C. § 1901a, and case
law similarly bars the defenses of estoppel and laches.  (Id. at
5-6.)

     As with the prior allegations made by Defendant, these
allegations similarly fail to constitute a meritorious defense to
the underlying student loan debt action.  With respect to whether
the United States provided notice under the FDCPA, a review of
the final page of the complaint demonstrates that the United
States included a notice purporting to conform to the
requirements of the Act.[5]  Additionally, the Court notes that a

_____

5.  In observing that the United States provided a purported
notice under the FDCPA, the Court makes no determination
regarding the legal sufficiency of this notice and whether it
fully complies with the requirements of the Act.  That issue is

primary purpose behind the FDCPA is to "eliminate abusive debt collection practices" such that Congress gave consumers a private right of action against debt collectors who fail to comply with the FDCPA's requirements. <u>Lesher v. Law Offices of Mitchell N. Kay, PC</u>, 650 F.3d 993, 996-97 (3d Cir. 2011) (citing 15 U.S.C. § 1692(e)).  It is clear that the FDCPA is a remedial statute, <u>Lesher</u>, 650 F.3d at 997, which is "designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." <u>Baker v. G.C. Servs. Corp.</u>, 677 F.2d 775, 777 (9th Cir. 1982).  Therefore, even assuming that Defendant properly alleged and could prove violations of the FDCPA by the United States[6] in attempting to collect this student loan debt, those alleged violations, in and of themselves, do not constitute a defense to the validity of the underlying debt for which collection was sought. <u>Cf. Azar v. Hayter</u>, 874 F. Supp. 1314, 1317 (N.D. Fla. 1995), <u>aff'd</u>, 66 F.3d 342 (11th Cir. 1995) (recognizing that claims brought under the FDCPA have "nothing to do with whether the underlying debt is

---

not presently before the Court because this is not a private action brought by a consumer against a debtor under the FDCPA. For purposes of this motion, the Court simply recognizes that a purported notice was included in the complaint to counter Defendant's allegation that no such notice was provided because Defendant did not have any contact with the Department of Education since 1986.

6.  To be clear, this issue is not before the Court, and the Court makes no findings regarding whether any alleged actions by the United States violated the FDCPA.

valid" but instead concern "the method of collecting the debt"). Thus, Defendant's reliance on the FDCPA is misplaced because any alleged violation of the the Act cannot stand independently to establish a meritorious defense to the underlying debt.

However, the Court -- broadly construing Defendant's allegation that he has not received any correspondence from or had contact with the Department of Education since 1986 -- interprets this allegation as an argument that the United States is somehow barred from collecting on Defendant's defaulted student loans based on the defenses of the statute of limitations, laches, or estoppel.  Contrary to Defendant's argument, the law is clear that these defenses are inapplicable in actions where the United States seeks to recover on defaulted student loans.  See, e.g., United States v. Tuerk, 317 F. App'x 251, 252-53 (3d Cir. 2009) (affirming grant of summary judgment to the United States in an action on defaulted student loans where pro se defendant asserted the claim was otherwise time-barred, and further noting that 20 U.S.C. § 1901a eliminated all limitations defenses in student loan actions, including equitable defenses such as laches); United States v. Schiffres, No. 09-6273, 2011 WL 198057, at *2 (D.N.J. Jan 20, 2011) (granting summary judgment to the United States on defendant's defaulted student loans and rejecting defendant's statute of limitations argument because Section 1901a "eliminated all statutes of

limitation on actions to recover defaulted student loans.").
Accordingly, the allegation that Defendant has not been contacted
by the Department of Education since 1986 fails to qualify as a
meritorious defense because, even if Defendant established this
fact at trial, it cannot provide Defendant with a complete
defense to the action.

(4) <u>Settlement and an Inability to Pay</u>

Defendant argues that he previously attempted to settle his
debt by making "a lump sum payment once," but that he was unable
to "accumulate a sum of money as large as ... requested."  (Mot.
to Vacate Default J. [Doc. No. 5] 2.)  Defendant also alleges
that he "did not *refuse* to make payment" on his loans but simply
that he "was *unable* to" in light of his finances.[7]  (<u>Id.</u>)
(emphasis in original).  Defendant also seemingly relies on the
October 2011 enactment by Congress of an income based repayment
plan,[8] as a potential meritorious defense to the underlying
action.  (<u>Id.</u>)

---

7.  Regarding his alleged inability to pay, Defendant represents
that he "sent all [his] financial documents to them via
registered US mail with return receipt for review."  (<u>Id.</u>)  It is
unclear whether Defendant sent these documents to the Department
of Education, or to Plaintiff's counsel in this case.

8.  According to Defendant the income based repayment plan "sets
payments at no more than 10% of house hold income with a cap of
no more than 15% with the remaining balance forgiven in as little
as 10 years [for] those willing to work in public service."
(<u>Id.</u>)

In response, the United States argues that it was within its rights to reject any alleged settlement offer made by Defendant and that such a rejection cannot serve as a basis to vacate the default judgment.  (Mem. in Opp'n to Mot. to Vacate Default J. [Doc. No. 7] 6-7.)  The United States further argues that the reason for Defendant's failure to pay his student loan obligations, whether it be the intentional result of a voluntary choice not to pay or the incidental result of a financial inability to pay, is not relevant to the underlying action.  (Id. at 8.)  The only relevant facts, according to the United States, are that "Defendant voluntarily, intelligently, and knowingly entered into multiple loan agreements with the U.S. Government, received federal funds per the agreements, and then failed to make repayments as scheduled by those agreements."  (Id.)  The United States further asserts that Defendant cannot rely on the recently enacted income based repayment plan because it is not retroactive and because under the promissory notes, once Defendant defaulted on the student loans, the lender is entitled to collect the entire amount still due and owing on the loan, without consideration for Defendant's annual or monthly income. (Id. at 7-8.)

Defendant's final allegations, just as those previously asserted, also fail to qualify as meritorious defenses in this defaulted student loan action.  By (1) alleging a prior, though

18

unsuccessful, attempt to settle this debt with the Department of Education; (2) asserting that he was unable to make payment on the loans for financial reasons; and (3) seeking to utilize a newly enacted income based repayment plan, Defendant, rather than defend against this claim, implicitly concedes the essential elements of the government's cause of action. Specifically, Defendant has conceded that (1) he executed the promissory notes at issue and took out three student loans in the amounts of $2,500, $2,500, and $1,200; (2) the Department of Education, and thereby the United States, is the present owner or holder of the promissory notes in question; and (3) Defendant has not repaid the balance on these loans as he was required to do, and is therefore in default. See Considine, 2008 WL 4723030, at *2 (setting forth the required elements the government must prove in order to recover on a promissory note for defaulted student loans). Furthermore, Defendant's allegations to not offer specific facts or evidence which rebut the Certificate of Indebtedness submitted by the United States. In sum these allegations fall far short of the conclusion that if established at trial, Defendant would have a complete defense to this action.[9]

---

9. To the extent Defendant challenges the involvement of the law firm of Frank J. Martone, P.C. in this case on behalf of the United States by asserting that this law firm has not shown any "relationship to this case for the last 25 years and has no interest in this case other than monetary compensation[,]" (see ..... at 1), the Court finds this argument irrelevant to any

Having carefully considered each of Defendant's allegations, the Court concludes that Defendant has not proffered a sufficiently meritorious defense to the underlying student loan action which warrants vacating the default judgment in this case.

**B.   Lack of Culpability**

To determine whether it was defendant's culpable conduct that led to the default judgment requires a showing of "more than mere negligence[.]"   <u>Nationwide Mutual</u>, 175 F. App'x at 523 (citation and internal quotations omitted).   Innocent mishaps or mere mistakes generally indicate a lack of culpability on the part of a defendant, but "[r]eckless disregard for repeated communications from plaintiffs and the court" can be sufficient to" demonstrate culpable conduct.   <u>Id.</u>

Here, Defendant asserts that his failure to plead or otherwise respond in this action was the result of excusable neglect.   (Mot. to Vacate Default J. [Doc. No. 5] 2.) Specifically, Defendant contends that the "[s]ummons was not delivered to" him, but rather "was left on a chair in front of [his] estranged wife's domicile[.]"[10]   (<u>Id.</u>)   Defendant concedes

---

consideration regarding whether to set aside the default judgment.   The United States is entitled to its choice of counsel, and any challenge to Plaintiff's choice of legal representation may only be made by a separate disqualification motion, and therefore is not properly before the Court.

10.   In his moving papers, Defendant only refers to the summons, as opposed to both the summons and the complaint.   For purposes of this motion and in light of Defendant's <u>pro se</u> status,

in the motion that his estranged wife's address, located at 2919
Marne Highway, Mount Laurel, New Jersey 08054, is Defendant's
"only legal address." (Id.)  However, Defendant explains that as
a result of "financial difficulties over the last year ...
[Defendant and his wife] are not always on speaking terms, nor
do[es] [Defendant] always reside at the legal address" set forth
above. (Id.)  Defendant represents that although he and his wife
are presently trying to reconcile, "[a]t the time of service
[Defendant] was not [at their legal residence]." (Id.)
According to Defendant, he "assumed at the time, that in a matter
as important as this[,] some one [sic] would attempt to contact
[him] again." (Id.)

     The United States disputes Defendant's argument that the
summons and complaint were not properly served in this case.  The
United States asserts that service was properly effected in this
case because a copy of the summons and complaint were left at
Defendant's dwelling house or usual place of abode with someone
of suitable age and discretion who resides there pursuant to
Federal Rules of Civil Procedure 4(c)(1) and 4(e)(2)(B).  (Mem.
in Opp'n to Mot. to Vacate Default J. [Doc. No. 7] 1-2.)  In
support of this contention, the United States submitted an
Affidavit of Service by process server Wilbert Smith of

---

however, the Court construes the term "summons" as used by
Defendant broadly and intended to refer to both the summons and
the complaint.

21

Consolidated Legal Support Services, Inc., declaring under penalty of perjury that the content of the Affidavit is true and correct.  (See Aff. of Service, Ex. B to the Decl. of Josephine Martone [Doc. No. 7-3] 1.)

     Under Federal Rule of Civil Procedure 4(e)(2)(B), "an individual — other than a minor, an incompetent person, or a person whose waiver has been filed — may be served in a judicial district of the United States by: ... leaving a copy of [both the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" FED. R. CIV. P. 4(e)(2)(B).  The Court's review of the Affidavit of Service specifically evidences the fact that Wilbert Smith, the processor server here, successfully served a copy of both the summons and complaint in this action on July 29, 2011 at 12:15 p.m. by leaving "a copy with a competent household member over 14 years of age residing" at 2919 Marne Highway, Mount Laurel, New Jersey 08054 -- Defendant's address.  (See Aff. of Service, Ex. B to the Decl. of Josephine Martone [Doc. No. 7-3] 1.)  The Affidavit of Service further identifies the "competent household member" as "Mrs. Holohan[,]" the "spouse" of Defendant, noting that Mrs. Holohan is a female, approximately forty-five years of age, five feet, five inches tall with brown hair.  (Id.)

     Significantly, Defendant readily concedes that his then

22

estranged wife's domicile at 2919 Marne Highway in Mount Holly is in fact Defendant's "only legal address." (Mot. to Vacate Default J. [Doc. No. 5] 2.) Moreover, Defendant fails to offer factual support, by way of affidavit, declaration, or otherwise, demonstrating that the summons and complaint were simply left on a chair in front of the home as he contends, rather than served on Mrs. Holohan directly. (Id.) Defendant's unsupported assertion standing alone is insufficient to rebut the Affidavit of Service by Wilbert Smith attesting that the summons and complaint was left with Mrs. Holohan at the couple's home. Accordingly, the Court finds that service was proper under Rule 4(e)(2)(B).

Whether Defendant was physically present at the home on a daily-basis during the estrangement from his wife is immaterial to determining whether the 2919 Marne Highway address constitutes Defendant's usual dwelling or place of abode pursuant to the Rule. Further, Defendant does not allege a lack of access to the home in order to receive mail or otherwise check in on his affairs at that address. Defendant, having elected to utilize this address as his sole legal address even during the estrangement from his wife, had a responsibility to inquire on a regular basis whether any documents effecting his legal affairs and financial obligations were delivered to that address by mail or otherwise. Although not as egregious as recklessly

disregarding repeated communications from Plaintiff or the Court,
Defendant's conduct in failing to regularly inquire and follow up
on whether deliveries were made for him at his only legal address
represents more than an innocent mishap or mere mistake.
Accordingly, Defendant bears at least some degree of culpability
for the default judgment being entered in this case.

     **C.    Prejudice to the United States**

     The United States asserts that it may have already been
prejudiced in this action because the filing of the present
motion resulted in an inherent delay while the motion was pending
before the Court during which time Defendant could "spend any
available money he has, leaving nothing for ... Plaintiff" in the
future in order to execute on the judgment.  (Mem. in Opp'n to
Mot. to Vacate Default J. [Doc. No. 7] 3.)  Because a plaintiff
suffers prejudice where its "ability to pursue the claim has been
hindered .... [by, for example,] loss of available evidence,
increased potential for fraud or collusion, or substantial
reliance upon the judgment[,]" <u>Nationwide Mutual</u>, 175 F. App'x
at 524 (citation and internal quotations omitted), the Court
agrees with the United States that to the extent Defendant may
have depleted his financial assets during the pendency of this
motion, the United States may have suffered some amount of
prejudice.  At this time, however, the Court cannot make a
finding on this issue because there is no evidence on the record

to suggest that Defendant actually engaged in this type of
activity and depleted his available financial resources.

Moreover, at any time after the expiration of the automatic
fourteen-day stay under Rule 62(a), the United States was free to
execute on the default judgment, even after the motion was filed,
because Defendant's motion to vacate under Rule 60(b) did "not
affect the judgment's finality or suspend its operation."  FED.
R. CIV. P. 60(c)(2); see also 11 Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 2903 (2d ed. 1995)
(noting that "[a] posttrial motion, seeking a new trial or some
similar kind of relief, does not stay the judgment[, and] [t]he
party in whose favor the judgment runs is free to have execution
on it or to bring proceedings to enforce it after the expiration
of the automatic stay provided for in Rule 62(a).").  While it is
within the discretion of the Court to stay the execution of a
judgment or any proceedings to enforce it during the pendency of
a motion for relief from the judgment under Rule 60(b), see FED.
R. CIV. P. 62(b)(4), no such stay was entered in this particular
case, and the United States could have sought to execute on this
judgment in early October of 2011, approximately three weeks
before Defendant even filed his motion under Rule 60(b).  Thus,
the Court cannot find that the United States has already, or will
later, suffer any prejudice if the default judgment were vacated.

Having considered all three factors in determining whether

Defendant's motion to vacate a default judgment should be granted, the Court finds that the motion must be denied and the default judgment entered against Defendant must stand.  As set forth more fully _supra_, Defendant failed to allege a sufficiently meritorious defense to the underlying action seeking to recover on defaulted student loans -- the threshold issue for vacating a default judgment.  Additionally, Defendant's failure to regularly inquire and follow up on whether deliveries were made for him at his only legal address constitutes at least some moderate level of culpability by Defendant which resulted in the default judgment.  Although there has not been a significant showing that the United States will be prejudiced by vacating the default judgment, the Court notes that the absence of a meritorious defense and the presence of culpable conduct by Defendant, on balance, are sufficient in this case to deny the motion.[11]

---

11.  To the extent Defendant's motion may be construed as seeking to vacate the default judgment pursuant to Rule 60(b)(6) based on "any other reason that justifies relief", the Court finds that Defendant has failed to satisfy the "added a requirement that a party ... must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." _Budget Blinds_, 536 F.3d at 255 (footnote and citations omitted).  The allegations of Defendant's motion, set forth in detail _supra_, cannot fairly be said to demonstrate the type of "extreme and unexpected hardship" which is required to set aside a default judgment under Rule 60(b)(6). _$90,745.88 Contained in Account Number_, 2012 WL 456535, at *2 (citing _Budget Blinds_, 536 F.3d at 255).

26

**V.**   **CONCLUSION**

For the foregoing reasons, Defendant's motion to vacate a default judgment [Doc. No. 5] is denied with prejudice.  An Order consistent with this Opinion will be entered.


Dated: June 18, 2012           /s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.